UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

PASCAL HOYA,                                )
                                            )
      Plaintiff,                        )
                                            )
  v.                                        )        CIVIL NO. 1:05-CV-063
                                            )
FORT WAYNE FOUNDRY                          )
CORPORATION, PONTIAC DIVISION               )
                                            )
     Defendant.                          )

## OPINION AND ORDER

Plaintiff, Pascal Hoya ("Hoya"), was caught by his employer, Defendant  Fort Wayne Foundry ("the Foundry") sleeping in a wire mesh crate in the parking lot.   After the Foundry terminated him for "premeditated sleeping," Hoya filed the instant lawsuit alleging race and national origin discrimination as well as retaliation.  Before the court is the Foundry's Motion for Summary Judgment filed on May 22, 2006.  Hoya responded on June 20, 2006 to which the Foundry replied on June 27, 2006.[1]  For the following reasons, the Foundry's Motion for Summary Judgment will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a

---

[1] On July 18, 2006, during the course of the Court's consideration of the filings, plaintiff filed a sur-reply to which the Defendant filed a sur-response on July 26, 2006.  Those filings have been considered and do not change the Court's analysis in this Opinion and Order.

motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

Mindful of these standards, the court turns now to an examination of the factual record.

## FACTUAL BACKGROUND

Hoya is a black male born in Cameroon, Africa. The Foundry employed Hoya beginning in June 1998 and for the five years preceding his termination he worked as a maintenance/utility worker. Throughout the course of his employment relationship with the Foundry, Hoya held bargaining unit positions and worked in a union shop in which he was represented by the Glass, Molders, Pottery, Plastic and Allied Workers International Union and its GMP Local #285 ("the Union"). Hoya was terminated from the Foundry's employ on August 18, 2003 for violation of a negotiated contract work rule.

Temporarily setting aside the fact of Hoya's somnolence, it is an accurate characterization to state that Hoya has an unimpressive work history with the Foundry. Prior to his discharge on August 18, 2003, Hoya received fourteen disciplinary notifications (excluding attendance related notices). The Union routinely filed grievances and sought clarification regarding circumstances

2

leading to these disciplinary notifications issued to Hoya.  As a result of the Union's intervention, two of Hoya's disciplinary notifications were rescinded.  However, the remainder, after investigation by union officials, were sustained.[2]

From the summer of 2002 through the date of discharge, Mike Wallace ("Wallace"), a white male, was Hoya's direct supervisor.  On February 4, 2003, Wallace issued a disciplinary notification to Hoya and his coworker, Troy Davis ("Davis") for failure to complete assigned work duties by the end of their shift.  Prior to this disciplinary notification, Hoya had received a verbal warning for "interfering with plant quality, safety, or efficiency" and, four months later, a written warning for the same rule violation.  As a result, Hoya received a three day suspension.  Davis, however, received only a verbal warning because it was the first time he had violated this rule in a 12-month period.   As was the case with other disciplinary notices, the Union grieved this discipline.

On March 12, 2003, the Foundry held a meeting to discuss open grievances, including Hoya's.  At that time, the Foundry agreed to remove a written warning previously issued to Hoya for safety violations so that his three-day suspension would revert to a written warning.  Within a week, Hoya filed his second Charge of Discrimination (see fn. 2 for discussion of first Charge) with the Fort Wayne Metropolitan Human Relations Commission ("METRO") alleging that (1) the Foundry discriminated against him by giving him more severe discipline than Davis; (2) Wallace was reprimanding him for offenses committed by others; (3) Wallace was harassing him and creating

---

[2]Hoya's first disciplinary notification occurred within 4 months of his start of employment and involved an altercation with a supervisor.  This violation resulted in discharge, at least until Hoya grieved the discharge through  the Union and was reinstated pursuant to an agreement between the Union and the Foundry which placed Hoya on a sixty day suspension.  Despite his reinstatement, Hoya filed his first charge of discrimination alleging race discrimination claiming that the supervisor involved in the altercation, also an African-American, received lesser discipline.  He eventually withdrew the allegations of discrimination.

a hostile work environment.  On August 2, 2005, METRO issued a  "No Probable Cause Decision" wherein METRO determined that the difference in discipline between Hoya and Davis was justified by the differences in their respective disciplinary records and was unrelated to Hoya's race or national origin.  METRO also concluded that different supervisors, not just Wallace, had disciplined Hoya for rule violations.

At the time of the events giving rise to his discharge, Hoya worked as a Core Room Utility Maintenance Worker assigned to third shift which commenced at 11:00 p.m. and ended in the early morning hours the following day.  Hoya's primary job responsibility was to ensure that core room equipment was in good working order and to prepare the equipment for the 1st shift production workers who typically began at 4:00 a.m.  During the course of his shift, Hoya was permitted two fifteen minute breaks, but entitlement to such breaks occurred only if the assigned work for the shift was complete.

On August 11, 2003, Hoya reported for work in the Core Room.  At the outset of his shift, Wallace conducted a shift meeting, attended by Hoya, wherein both Hoya and a coworker "Sammy" were informed of their job assignments which were to be completed prior to the first shift's arrival at 4:00 a.m.  At approximately 3:30 to 3:35 a.m.[3] Wallace went to the Core Room to evaluate the progress of Hoya and Sammy and to assist them with any problems they had encountered.  When Wallace arrived, Hoya was not working on his assigned duties.  Wallace checked the progress of the two on their assigned work and noted that work remained uncompleted.  At approximately 3:40 a.m. Wallace attempted to locate Hoya elsewhere in the Core Room.  When Wallace could not locate

---

[3]The time estimates that follow are consistent with Wallace's testimony during his deposition and the handwritten notes Wallace completed shortly after the incident.  Plaintiff does not dispute these times.

Hoya within the Core Room, he paged him to return there.  At approximately 3:45 a.m., Wallace notified Union Steward Rodimez Rodriguez ("Rodriguez") that machines assigned to Hoya had not been cycled and therefore were not ready for production when the first shift arrived.  Wallace then went on a search of the plant looking for Hoya who had not returned the earlier page.  Wallace could not find Hoya within the confines of the plant.

At 3:55 a.m., Wallace returned to the Core Room and discovered additional maintenance work that had not been completed.  Wallace again paged Hoya to return to the Core Room and again, Hoya did not respond.  At 4:05 a.m., Wallace asked the other third shift supervisor on duty, Dave Scott ("Scott") to assist him in the search for Hoya.  After stepping outside the Core Room rear door, Wallace detected the odor of a mosquito candle.  He then obtained a flashlight and he and Scott proceeded through the parking lot approximately 30 feet in the direction of the aroma from the mosquito candle.  At 4:10 a.m., Wallace, discovered Hoya lying in a wire mesh shipping crate with his eyes closed.  Before awakening him, Wallace and Scott retrieved a Union steward and a security guard to witness the events that followed.  Wallace then asked the Union Steward to awaken Hoya and have him return to the Core Room.

Upon his return to the Core Room, Hoya was suspended pending completion of an investigation into the incident.  After further discussion and review by officials at the Foundry, including Dave Lorey, the Corporate Director of the Human Resources Department, the Foundry, pursuant to the terms of the CBA,[4]  terminated Hoya for the class III offense of premeditated sleeping. According to Lorey, his review included the contemporaneous report of the incident by

---

[4]The CBA expressly prohibits "premeditated sleeping on the job" and provides only one form of discipline, immediate termination, for that offense.  According to Lorey, the language of "premeditated sleeping" was utilized to distinguish instances in which an employee rests his head during a break and unintentionally nods off.  Such offenses are treated as lesser offenses subject to progressive discipline.

Wallace as well as discussions with Union officials.  Lorey stated:

> I did not discern any mitigating circumstances which I felt would support a reversal
> of the recommendation to terminate.  I determined that but for the intervention of the Union,
> Hoya would likely have been terminated on two prior occasions, that he was reinstated
> previously under terms akin to a Last Chance Agreement, and, most compellingly, no factual
> dispute existed which would logically suggest that Hoya did not engage in premeditated
> sleeping on the job.
>
> I granted final approval of the recommendation to terminate because I honestly
> believed on the basis of my review of the pertinent evidence that Hoya committed the Class
> III offense, premeditated sleeping, with which he was charged.

(Lorey Aff. ¶¶30-31).

On August 25, 2003, the Union grieved the termination but eventually withdrew it.  In the

grievance proceeding, the Union, on Hoya's behalf, admitted that Hoya was asleep but contended

that he was not "on duty" at the time.

Subsequently, Hoya filed a third Charge of Discrimination against the Foundry which is the

subject of the present lawsuit.

**Other Individuals Terminated for Premeditated Sleeping**

During the discovery phase of this litigation, Hoya became aware that two individuals,

Hermilo Cortez ("Cortez") and  Jeannette McFarland ("McFarland") had committed the offense

of premeditated sleeping but received different discipline than he.  In the instance of Cortez, a 28

year veteran of the Foundry, he received a five day suspension for his offense and signed a "Last

Chance Agreement" with the Foundry after following grievance procedure negotiations with the

Union.  He was not supervised by Wallace and had a far superior work history with the Foundry

than did Hoya.  Further, according to Lorey, there existed evidentiary disputes regarding Cortez's

conduct which, after full consideration, required imposition of a lesser disciplinary sanction.

As for McFarland, her offense occurred nearly a year and a half after Hoya's termination. And, unlike Hoya's situation, she was initially accused of premeditated sleeping on the job but this determination was overturned during the grievance process for absence of evidence related to the "premeditation" element of the offense. She, like Cortez, was offered and signed a Last Chance Agreement with the Foundry. Under this agreement, McFarland was given a thirty (30) day unpaid suspension and was reinstated with the understanding that she was subject to termination if she incurred any disciplinary action for attendance in the six-month period following here reinstatement or if she were ever found to be lying down on the job or sleeping, whether or not premeditated. McFarland also was not supervised by Wallace.

In the present lawsuit, Hoya contends that the Foundry discriminated against him based on his race and national origin and that white employees periodically slept on the job and were not terminated. He also asserts that Wallace fabricated instances of misconduct so as to "set him up" for termination. Finally, he alleges that his termination is in retaliation for his prior charges of discrimination. It is to these allegations that the court now turns.

## DISCUSSION

As noted above, Hoya alleges discrimination based upon race and national origin in violation of Title VII [5] and 42 U.S.C. §1981. Discrimination may be proven either directly, such as by an admission by the defendant, or indirectly under the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);

---

[5]Title VII protects employees from employers who "fail or refuse to hire or ... discharge any individual, or otherwise ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ...national origin." 42 U.S.C. § 2000e-2(a). Discrimination includes claims of harassment creating a hostile work environment and claims that an employer retaliated against an employee for complaining of perceived discrimination.

*Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299-302 (7th Cir.2004); *Alexander v. Wis. Dep't of Health & Family Servs.,* 263 F.3d 673, 682 (7th Cir.2001). For his discrimination claim, Hoya makes no argument relating to the direct method, opting instead to proceed only under the indirect method. *McDonnell Douglas* places the initial evidentiary burden on the plaintiff to establish a prima facie case, which is the same whether the claim is brought under Title VII or § 1981.   And thus, to survive summary judgment, Hoya must navigate through the oft-recited *McDonnell-Douglas* standard:

> First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff. Finally, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

A plaintiff successfully proffers a prima facie case of race/national origin discrimination when he shows: (1) that he is a member of a protected class; (2) he was performing according to the employer's legitimate expectations; (3) plaintiff suffered an adverse action; and (4) similarly situated white individuals were treated more favorably.   Here, Defendants do not challenge that Plaintiff meets the first and third prongs of the prima facie case.   What Defendants do challenge is the second and fourth prongs, i.e., that Hoya was performing his job satisfactorily at the time of his termination and that similarly situated others were treated more favorably.

With respect to these issues, Hoya argues that he was meeting his employer's expectations and that his performance in the months prior to his termination was not deficient.   Hoya also

8

contends that even if he was not meeting the Foundry's legitimate employment expectations at the time of his termination, he can still establish a *prima facie* cases of race and national origin discrimination because the company applied its expectations against him in a discriminatory manner, i.e., that similarly situated white employees were permitted to sleep on the job without consequence. The Foundry, of course, contends that being asleep on the job when work remains unfinished cannot possibly be meeting the expectations of the employer and that it did not treat similarly situated white employees who fell asleep on the job differently.

"When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated white employees in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge-allowing the plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry." *Peele v. Country Mut. Ins. Co.* 288 F.3d 319, 329 (7th Cir. 2002) (citing *Curry v. Menard,* 270 F.3d 473, 478 (7th Cir.2001); *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 886-87 (7th Cir.2001); *Oest v. Illinois Dept. of Corr.,* 240 F.3d 605, 612 n. 3 (7th Cir.2001); *Flores v. Preferred Tech. Group,* 182 F.3d 512, 515 (7th Cir.1999). In this case, however, Hoya has not produced sufficient evidence that similarly situated individuals outside the protected class were treated more favorably than he (i.e., in a disparate manner) so as to permit a collapse of the prima facie case elements into the pretext inquiry.

To be "similarly situated," a plaintiff must show that "h[is] performance, qualifications, and conduct were comparable to the nonprotected class member in 'all material respects.' " *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 274 (7th Cir.2004). "Broad-brushed, conclusory

allegations" are not sufficient to show nonprotected employees are similarly situated, *Scaife v. Cook County,* 446 F.3d 735, 740 (7th Cir.2006), rather, comparative evidence allowing the Court to make a reliable analysis is necessary. *Dandy,* 388 F.3d at 274.  Moreover, "in disciplinary cases-in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason- a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir.2000).. "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, *and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id.* at 617-18 (emphasis added).  If Hoya fails to identify a similarly situated co-worker outside of his protected class, or  the co-worker identified by the plaintiff, while similarly situated, was not treated in a more favorable manner, the court need not address any of the underlying allegations of disparate treatment. *See Patterson v. Avery Dennison Corporation,* 281 F.3d 676,  680 (7th Cir. 2002) (holding that "we cannot compare [an employer's] treatment of [a plaintiff with that co-worker] ⋯ [if the plaintiff] fail[s] to meet her burden of establishing that [the co-worker] is a similarly situated employee."). *See also Radue,* 219 F.3d at 618.

Hoya contends that McFarland and Cortez were similarly situated to him and disciplined less harshly for the same offense that resulted in his own discharge.  The problem with this position is that it altogether lacks evidentiary support.  Hoya expends much effort arguing that the Foundry has not set forth the evidentiary basis necessary to prove that the above two individuals above were not similarly situated to him; yet,  under the *McDonnell-Douglas* formulation this burden falls squarely on Hoya's shoulders.  What the Foundry has done is produce evidence that both

10

McFarland and Cortez had more seniority than Hoya, reported to different supervisors, had been disciplined far less than Hoya in the past, and had differentiating/mitigating circumstances which affected their discipline. Hoya has not refuted any of this evidence. Rather, Hoya attempts to group himself in with these two individuals despite his *admission* in Union proceedings and otherwise that he was asleep at work. According to Lorey, unlike the cases of Cortez and McFarland, there was no evidentiary problem to be overcome in Hoya's instance because he admitted the conduct and it was witnessed by four individuals. (Lorey Aff. ¶30).

Hoya now attempts to refute this evidence by his testimony that (1) he was only "meditating about his mother" and not asleep at all, and (2) if he was asleep when he was found, he was on a break and thus, he was not sleeping on the job. Laying aside the obvious credibility problems with these new factual contentions, Hoya does not contest that his work was not finished at the time he was caught with his eyes closed in a crate in the parking lot nor does he contest the time frame set out in the contemporaneous report written by Wallace with any credible evidence of his own. He does argue that because a witness saw him at 4:25 a.m. he was not asleep then. But, this is beside the point since even Wallace's time line has him awake by 4:25 a.m. and asleep a half-hour before then. Moreover, he does not dispute that he was missing from the plant during the time frames in question. Thus, his arguments that his conduct was similar to that of the other individuals who were alleged to have been sleeping are unavailing and unsupported by anything other than his own speculative and conclusory allegations. *Scaife v. Cook County,* 446 F.3d 735, 740 (7th Cir. 2006) (holding that conclusory allegations by plaintiff that employees are similarly situated "may be sufficient to prevail against a motion to dismiss under Rule 12(b)(6), but to survive summary judgment, Scaife needed to do better than to make such broad-brushed, conclusory allegations.").

Accordingly, Hoya has not set forth a genuine issue of material fact as to whether similarly situated others were treated differently and thus, the court is unable to infer discriminatory intent under the *McDonnell Douglas* framework.[6]

This said, the court is not at all convinced that even if Hoya was able to produce evidence of disparate treatment so as to get to the pretext analysis, he has evidence to show that the Foundry's proffered reason for his termination was, in fact, pretextual. Although the briefs in this case were filed prior to the Seventh Circuit's latest decision in *Forrester v. Ray Forrester v. Rauland-Borg Corp.,* No. 05-4650, slip op. at 5 (June 29, 2006), the case has critical importance to any pretext analysis undertaken in this case.

*Forrester* clarifies prior Seventh Circuit authority which suggests that pretext may be shown by evidence that the conduct at issue was "insufficient to motivate the discharge." See E.g., *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 813 (7th Cir.2005); *Davis v. Con-Way Transportation Central Express, Inc.,* 368 F.3d 776, 784 (7th Cir.2004); *Dyrek v. Garvey,* 334 F.3d 590, 598 (7th Cir.2003); *Hoffman-Dombrowski v. Arlington Int'L Racecourse, Inc.,* 254 F.3d 644, 652 (7th Cir.2001); *Amini v. Oberlin College,* 440 F.3d 350, 360 (6th Cir.2006); *McClain v. NorthWest Community Corrections Center Judicial Corrections Bd.,* 440 F.3d 320, 332 (6th Cir.2006); *Browning v. Department of the Army,* 436 F.3d 692, 695 (6th Cir.2006). As *Forrester* illuminates:

---

[6]Furthermore, because Hoya has failed to establish *prima facie* cases of race and national origin discrimination, the court is not required to (but may) address his pretext argument. *See, e.g., Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1036 (7th Cir.1999); *Coco,* 128 F.3d at 1178-79.

It adds nothing to the analysis of pretext but confusion.  If the stated reason for the challenged action did not motivate the action, then it was indeed pretextual.  If it was insufficient to motivate the action, either this means that it didn't motivate it, or that it shouldn't have motivated it.  If the first is the intended sense, the dictum is just a murky way of saying that the stated reason was not the real reason.  If the second sense is the one intended, then the dictum is wrong because the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason; but simply whether the stated reason *was* his reason: not a good reason, but the true reason.

*Id.*  Thus, *Forrester* defines pretext as  " a deliberate falsehood···· An honest mistake, however dumb, is not [a pretext], and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage."

 Here,  Hoya expends all of his efforts on two irrelevant and futile factual arguments.  First, he argues that he wasn't sleeping at all and thus, he didn't commit a terminable offense.  Even assuming the truth of Hoya's contention that he wasn't sleeping inside the crate, what matters is that the Foundry *believed* he was sleeping and four witnesses were present that confirmed this fact to the employer.  Even the union in its August 25, 2003 Grievance filed on behalf of Hoya admitted, "the employee admits to be sleeping ...."   Hoya has not presented a shred of evidence questioning that the decisionmakers at the Foundry did not believe him to be sleeping or that the incident was fabricated in any fashion.

 Secondly, Hoya appears to argue that even if he was asleep, he was on a break and thus, should not have been disciplined for the offense.  Again, the court cannot emphasize enough that the issue in the pretext stage is not whether the employer's conclusions were correct, the issue is whether the employer honestly *believed* he was not on break and thus, in violation of the Foundry's rules.  Here, all of the evidence undeniably points to the fact that Lorey had an honest belief that Hoya was sleeping while he should have been working.  Thus, Hoya has not raised any doubt that

13

the reason provided by the Foundry, even if Hoya believes it was mistaken, ill-conceived, flat-out wrong, or otherwise defective logic, was not the real reason for his termination. Accordingly, the Defendant's Motion for Summary Judgment on the race/national origin discrimination claims pursuant to Title VII and 42 U.S.C. §1981 is GRANTED.

**Retaliation Claim**

For many of the same reasons as above, the retaliation claim also fails. An employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII. 42 U.S.C. § 2000e-3(a). Like other discrimination claims, retaliation may be proven directly or indirectly. A prima facie case for retaliation under the indirect method requires the plaintiff to show that: (1) he engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated worse than a similarly situated employee who did not engage in statutorily protected activity. *Firestine v. Parkview Health Sys., Inc.,* 388 F.3d 229, 233 (7th Cir.2004) (citations omitted).

There is no question that by filing multiple charges of discrimination against the Foundry, Hoya engaged in protected activity and that he suffered a materially adverse action when the Foundry terminated his employment. As was the case with the race/national origin discrimination claims, however, Hoya has not shown any similarly situated employees who did not engage in the protected activity but who were treated more favorably than he. Hoya relies upon the same evidence he did in his race/national origin discrimination claims buttressed by his own conclusory allegation that he was singled out for termination because of the prior discrimination charges he had filed. Such evidence cannot satisfy the fourth element of the prima facie case for retaliation

14

because, as was the case previously,  Hoya has not demonstrated that the employees to which he

compares himself were similarly situated in all material respects.  Accordingly, Hoya's retaliation

claim fails.[7]

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion for Summary Judgment is GRANTED.

The Clerk is directed to enter judgment in favor of the Defendant on all claims.

Entered:

This 7th day of August 2006.

s/William C. Lee

United States District Court

Northern District of Indiana

---

[7]The same result would yield even if the court examined the retaliation claim at the pretext stage.
Hoya has not demonstrated any evidence questioning the reason given for his termination nor has he
presented any evidence that the Foundry considered his prior charges of discrimination when it decided to
terminate his employment.